UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| SHEDMAX, LLC, and TIMOTHY HOLLIS,<br><br>    Plaintiff.<br><br>v.<br><br>NATIONWIDE GENERAL INSURANCE COMPANY, NATIONWIDE MUTUAL INSURANCE COMPANY, MEGHAN JOHNSTON, DAVID TAYLOR and KIMBERLY E. HOWARD,<br><br>    Defendants. | CIVIL ACTION NO. 6:19-280-KKC<br><br><br>OPINION AND ORDER |

\*\*\* \*\*\* \*\*\*

This matter is before the Court on Plaintiffs Shedmax, LLC and Timothy Hollis' Motion to Remand (DE 7) and Defendant Kimberly E. Howard's Motion to Dismiss (DE 6).

I.   Background

Plaintiff Shedmax, LLC ("Shedmax") is a builder and seller of prefabricated storage sheds. (Compl. ¶ 17.) Plaintiff Timothy Hollis operates as Shedmax's principal and owner (Compl. ¶ 2.) On October 29, 2018, a fire destroyed a building located at a Shedmax production facility in Gray, Kentucky, and significantly damaged tools, materials, inventory, and records on the property. (Compl. ¶ 31.) Defendant Nationwide Sales Solutions, Inc. ("NSS") previously sold the business policy covering the facility to Shedmax. (Compl. ¶¶ 26-27.) Defendant Nationwide General Insurance Company ("NGIC") was the policy's

1

underwriter. (Compl. ¶ 27.) Defendant Nationwide Mutual Insurance Company ("NMIC") acts as the parent company of NSS and NGIC. (*See* Compl. ¶ 5.)

Immediately following the fire, Shedmax filed a claim with NGIC. (Compl. ¶ 35.) Thereafter, Defendant David Taylor, an adjuster for NMIC (Compl. ¶ 7), inspected the facility and informed Hollis that Shedmax did not have coverage for the facility (Compl. ¶ 37). Defendant Meghan Johnston, another NMIC adjuster (Compl. ¶ 6), requested additional information from Shedmax regarding other buildings at the facility as part of a coverage investigation into the pending claim (Compl. ¶¶ 41-43). With the remainder of the claim still pending, NGIC issued checks to Shedmax for the destruction of the building and related demolition costs. (Compl. ¶¶ 54, 62, 66.)

To assist with further processing of the claim, Shedmax hired an independent adjuster. (Compl. ¶ 79.) NGIC and NSS then hired an attorney to complete an Examination Under Oath ("EUO") of Shedmax's principals. (Compl. ¶ 83.) The attorney advised Shedmax that "no further consideration [would be] given to [its] claim" unless it complied with the EUO. (Compl. ¶ 84.) According to Shedmax, during these EUOs, the attorney asserted that Shedmax had fraudulently claimed its demolition expenses. (Compl. ¶ 100.) Defendant Kimberly E. Howard, another NMIC adjuster, attended the EUOs, acting as a special investigation unit investigator. (Compl. ¶ 103; DE 1 ¶ 19.)

On October 21, 2019, Plaintiffs brought various claims in Kentucky state court against Defendants for their handling of the insurance claim arising from the fire. (*See* Compl.) Defendants removed the case to this Court on November 22, 2019. (DE 1.) On December 18, 2019, Plaintiffs moved to remand the case back to state court. (DE 7.) Defendant Howard simultaneously moved to dismiss the claims against her or in the alternative, for judgment on the pleadings. (DE 6-1 at 1.)

In their Notice of Removal, Defendants noted that the Court should ignore Howard's citizenship in determining whether the Court has diversity jurisdiction over the case because Plaintiffs fraudulently joined Howard to defeat federal diversity jurisdiction. (DE 1 ¶¶ 16, 18.) Plaintiffs' claims against Howard include fraud, violation of the Kentucky Unfair Claims Settlement Practices Act, common law bad faith, intentional infliction of emotional distress, negligent infliction of emotional distress, civil conspiracy, and tortious interference with existing and prospective business relationships. (*See* Compl.) With regard to Howard, Plaintiffs set forth the following factual allegations in their Complaint:

> 103. Present at each of the EUOs was Defendant Howard. Howard was responsible for the harassment of Mr. and Mrs. Hollis, responsible for the irrelevant, unnecessary and time consuming commentary that unnecessarily lengthened the EUOs and caused mental distress to Tim Hollis and his spouse, Walteena Hollis.
>
> 104. The examinations under oath served no useful purpose and were conducted by Ms. Howard to purposefully harass, humiliate and demoralize Plaintiffs in this action. The only purpose for the examinations under oath was to improperly delay the claims of Plaintiffs, and to obtain information that would not be allowed in a civil action, due to the fact that Howard was fully aware that the conduct of each of the Defendants was going to lead to the filing of this action.
>
> 105. The examinations under oath were taken for a fraudulent purpose, and in bad faith.

(Compl. ¶¶ 103-105.)

## II.   Analysis

Defendants may remove a case brought in state court to federal court if the federal court would have had original jurisdiction over the case. 28 U.S.C. § 1441(a). Federal courts have original diversity jurisdiction over cases between citizens of different states where the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a). Original diversity jurisdiction requires complete diversity between parties such that "no party share[s] citizenship with any opposing party." *Caudill v. N. Am. Media Corp.*, 200 F.3d 914, 916 (6th Cir. 2000). If it

3

appears that a federal court lacks subject matter jurisdiction over the removed case, the federal court must remand the case to state court. 28 U.S.C. § 1447(c).

However, if the removing party proves that the plaintiff fraudulently joined a non-diverse defendant, the presence of the non-diverse defendant will not defeat complete diversity between parties. *Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 493 (6th Cir. 1999). "To prove fraudulent joinder, the removing party must present sufficient evidence that a plaintiff could not have established a cause of action against non-diverse defendants under state law." *Id.* But the Court must remand the action if a plaintiff has a "colorable" claim for recovery against the non-diverse defendant. *Id.* A plaintiff has a colorable claim where there is "arguably a reasonable basis for predicting that the state law might impose liability on the facts involved." *Alexander v. Elec. Data Sys. Corp.*, 13 F.3d 940, 949 (6th Cir. 1994) (citation and quotation marks omitted). Therefore, a non-diverse defendant is only fraudulently joined if it is "clear that there can be *no recovery* under the law of the state on the cause alleged or on the facts in view of the law." *Id.* (emphasis added) (citation omitted).

Moreover, when a court considers the complaint at issue in a fraudulent joinder claim, the court applies a "more lenient" standard than that applicable to a motion to dismiss. *See Casias v. Wal–Mart Stores, Inc.*, 695 F.3d 428, 433 (6th Cir. 2012). In assessing the complaint's sufficiency, courts must look to state law. *Alexander*, 13 F.3d at 948; *see also In re Darvocet, Darvon & Propoxyphene Prod. Liab. Litig.*, 889 F. Supp. 2d 931, 940-41 (E.D. Ky. 2012) ("In short, Sixth Circuit precedent and common sense dictate the use of state pleading rules to determine whether [a defendant] is fraudulently joined.") (citation and quotation marks omitted). Under Kentucky state law, a complaint must simply contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Ky. R. Civ. P. 8.01(1)(a). Accordingly, Kentucky "still follows the old notice-pleading regime." *Williams v.*

*Altman, McGuire, McClellan & Crum*, Civ. No. 12-131-ART, 2013 WL 28378, at *3 (E.D. Ky. Jan. 2, 2013). Therefore, Kentucky courts may dismiss a complaint only where a plaintiff "'would not be entitled to relief under any set of facts which could be proved.'" *Williams*, 2013 WL 28378, at *3 (quoting *Fox v. Grayson*, 317 S.W.3d 1, 7 (Ky. 2010)).

Importantly, the removing party bears the burden of establishing fraudulent joinder. *Alexander*, 13 F.3d at 948-49. This burden is a "heavy one." *Walker v. Philip Morris USA, Inc.*, 443 F. App'x 946, 954 (citation omitted). Indeed, in addressing fraudulent joinder claims, the court must construe "all disputed questions of fact and ambiguities in the controlling . . . state law in favor of the non removing party." *Coyne*, 183 F.3d at 493 (citation and quotation marks omitted).

Here, the amount in controversy is not contested. The only issue is whether there is complete diversity between all plaintiffs and all defendants. All defendants are diverse from Kentucky Plaintiffs except Howard. (Compl. ¶¶ 1-8.) The question then becomes whether Plaintiffs have stated a colorable claim under Kentucky law against Howard.

The Kentucky Unfair Claims Settlement Practices Act ("UCSPA") prohibits any person from engaging in the following acts or omissions, among others:

> (1) Misrepresenting . . . insurance policy provisions relating to coverages at issue; (2) Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies; (3) Failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies; (4) Refusing to pay claims without conducting a reasonable investigation based upon all available information; . . . (6) Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear; . . . (7) Compelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds; . . . (14) Failing to promptly provide a reasonable explanation of the basis in the insurance policy in relation

> to the facts or applicable law for denial of a claim or for the offer of a compromise settlement[.]

Ky. Rev. Stat. § 304.12-230. Plaintiffs allege that all Defendants, including Howard, violated the UCSPA by engaging in the aforementioned conduct. (Compl. ¶ 143.)

Relatedly, to establish a claim for statutory bad faith under the UCSPA or for common law bad faith, the insured must prove the following:

> (1) the insurer must be obligated to pay the claim under the terms of the policy; (2) the insurer must lack a reasonable basis in law or fact for denying the claim; and (3) it must be shown that the insurer either knew there was no reasonable basis for denying the claim or acted with reckless disregard for whether such a basis existed.

*Wittmer v. Jones*, 864 S.W.2d 885, 890 (Ky. 1993) (citation and quotation marks omitted). Plaintiffs further allege that "Defendants . . . were obligated to pay the claims under the terms of the policies, lacked a reasonable basis in law and fact for denying the claims, and knew that there was no reasonable basis for denying the claim or acted with reckless disregard for whether such basis existed." (Compl. ¶ 140.)

While the Kentucky Supreme Court has held that bad faith claims "apply only to persons or entities engaged in the business of insurance," that court has explained that the UCSPA applies to "insurance companies *and their agents* in the negotiation, settlement and payment of claims made against policies, certificates or contracts of insurance." *Davidson v. Am. Freightways, Inc.*, 25 S.W.3d 94, 95, 98 (Ky. 2000) (emphasis added). Moreover, the Eastern District of Kentucky, as Defendants recognize, has consistently noted that whether UCSPA or common law bad faith claims are colorable against insurance adjusters is unsettled under Kentucky law. *See Howard v. Allstate Vehicle & Prop. Ins. Co.*, No. 7:19-CV-0016-GFVT, 2019 WL 1951443, at *3 (E.D. Ky. May 2, 2019).[1] In contrast, the Western

---

[1] *See also Hambelton v. State Farm Fire & Cas. Co.*, CIVIL ACTION No. 18-65-HRW, 2018 WL 3233608, at *3 (E.D. Ky. July 2, 2018); *Stacy v. Liberty Ins. Corp.*, Civil Action No. 5:17-449-DCR, 2018 WL 493018, at *3 (E.D. Ky. Jan. 19, 2018); *Fugate v. Ohio Cas. Ins. Co.*, Civil Case No. 16-cv-00037-

6

District of Kentucky has routinely held that a plaintiff does not have colorable claims against insurance adjusters for UCSPA or common law bad faith claims. *See, e.g., Madison v. Nationwide Mut. Ins. Co.*, No. 1:11-CV-157-R, 2012 WL 692598, at *3 (W.D. Ky. Mar. 2, 2012) (collecting cases). But because this Court must construe ambiguities in Kentucky state law in Plaintiffs' favor, it is not "clear that there can be *no recovery* under [Kentucky state law]." *Alexander*, 13 F.3d at 949 (emphasis added) (citation omitted). Therefore, there is arguably a reasonable basis for predicting that Kentucky courts could permit bad faith actions to proceed against insurance adjusters like Howard. *Cf. Bustos v. Quality Rest. Concepts, LLC*, Civil Action No. 6:14-13-DCR, 2014 WL 2816963, at *5 (E.D. Ky. June 23, 2014) ("[A] claim of fraudulent joinder is an exceedingly poor setting in which to make novel arguments of state law.") (citing *Murriel-Don Coal Co. v. Aspen Ins. UK Ltd.*, 790 F. Supp. 2d 590, 599 (E.D. Ky. 2011)).

Next, Defendants contend that Plaintiffs have not sufficiently alleged facts to support a claim of bad faith against Howard. (DE 10 at 10.) Regarding Plaintiffs' UCSPA claims against Howard,[2] Plaintiffs allege that Howard was "responsible for the irrelevant, unnecessary and time consuming commentary that unnecessarily lengthened the EUOs" and that "[t]he only purpose for the examinations under oath was to improperly delay the claims of Plaintiffs, and to obtain information that would not be allowed in a civil action, due to the fact that Howard was fully aware that the conduct of each of the Defendants was going to

---

JMH, 2016 WL 3892399, at *2-3 (E.D. Ky. July 13, 2016); *Howard v. Allstate Ins. Co.*, Civil Action No. 5:14-173-DCR, 2014 WL 5780967, at *6-*7 (E.D. Ky. Nov. 5, 2014); *Collins v. Montpelier U.S. Ins. Co.*, Civil No. 11-166-ART, 2011 WL 6150583, at *2-*4 (E.D. Ky. Dec. 12, 2011).

[2] Defendants argue that Plaintiffs "limit[] their argument to the contention that they have brought a colorable claim against Defendant Howard based in bad faith." (DE 10 at 8.) While Plaintiffs only specifically discuss "bad faith" claims in their Motion to Remand (*see* DE 7-1 at 4-6), Plaintiffs still contend that they "have made colorable *claims*" against Howard, and therefore, the Court should grant its motion. (DE 7-1 at 7 (emphasis added.)) Given the heavy burden on Defendants to prove fraudulent joinder, the Court will consider *any* potential colorable claim Plaintiffs may have against Howard.

lead to the filing of this action." (Compl. ¶¶ 103-104.) These allegations are consistent with certain conduct falling under the UCSPA, specifically "[f]ailing to adopt and implement reasonable standards for the *prompt investigation of claims* arising under insurance policies;" "[r]efusing to pay claims without *conducting a reasonable investigation* based upon all available information;" and "[c]ompelling insureds to *institute litigation* to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds." Ky. Rev. Stat. § 304.12-230 (emphasis added). The Court cannot find, based on these allegations, that Plaintiffs would *not* be entitled—under *any* set of facts they could prove—to relief for their UCSPA claim against Howard, due to the leniency afforded to Plaintiffs, the heavy burden placed on Defendants in the fraudulent joinder context, and Kentucky's liberal pleading standard. Instead, Plaintiffs have a colorable UCSPA claim against Howard because their allegations have provided arguably a reasonable basis for predicting that Kentucky state law would impose liability on Howard.

In arguing that Plaintiffs did not provide sufficient facts to allege a colorable bad faith claim against Howard, Defendants cite to *Brown v. Indem. Ins. Co. of N. Am.*, Civil Case No. 17-CV-00193-JMH, 2017 WL 3015171 (E.D. Ky. July 14, 2017). (DE 10 at 10-13.) There, the district court denied the plaintiffs' motion to remand, concluding that the plaintiffs "failed to allege a factual basis" for their bad faith claim against the non-diverse defendant. *Brown*, 2017 WL 3015171, at *3 (citations and quotation marks omitted). As the court explained, "Plaintiffs aver that [the non-diverse defendant] inspected and reported on the damage to their barn, but there is no factual allegation that either his inspection or his report were completed in error or otherwise subject to criticism." *Id.* That is not so here, where Plaintiffs critique the length and purpose of Howard's investigation.

8

For purposes of surviving a motion to remand, Plaintiffs have stated a colorable UCSPA claim against Howard.[3]  As such, the Court finds that Howard was not fraudulently joined, and accordingly, the Court lacks original diversity jurisdiction over the case. Therefore, the Court must remand the case to state court, and Plaintiffs' motion to remand is granted.

### III. Conclusion

The Court hereby ORDERS as follows:

1. Plaintiffs Shedmax, LLC and Timothy Hollis' Motion to Remand (DE 7) is GRANTED;

2. Defendant Kimberly E. Howard's Motion to Dismiss (DE 6) is DENIED as MOOT;

3. This matter is REMANDED to Knox Circuit Court; and

4. This case is STRICKEN from the Court's active docket.

Dated October 26, 2020

*Karen K. Caldwell*
KAREN K. CALDWELL
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF KENTUCKY

---

[3] While Defendants set forth reasons why the Court should not remand the case for each specific cause of action raised against Howard, the Court declines to address these arguments because Plaintiffs have a colorable UCSPA claim against Howard.  And as long as "[t]here is *a* colorable basis for predicting that a plaintiff may recover against non-diverse defendants, this Court must remand the action to state court."  *Coyne*, 183 F.3d at 493 (emphasis added).